## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BOBBI DARNELL,

     *Petitioner,*

  vs.

Case No. 17-03063-EFM-TJJ

JOHN MERCHANT, Sheriff, Brown County, Kansas, and KICKAPOO TRIBE IN KANSAS, Kickapoo Reservation, Horton, Kansas,

     *Respondents.*

## MEMORANDUM AND ORDER

Petitioner Bobbie Darnell, a member of the Kickapoo Tribe in Kansas (the "Tribe"), filed a Petition for Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303 seeking relief from her tribal court convictions and sentence. Petitioner requests that the Court issue a writ of habeas corpus commanding her immediate release from jail in Brown County, Kansas, overturning her convictions in Kickapoo criminal cases numbers CRM016-11 and CRM016-23, and staying all further tribal court action against her (Doc. 1). In addition, Petitioner has filed a motion for release on her own recognizance (Doc. 25). As explained below, the Court denies the Petition for Writ of Habeas Corpus because Petitioner has not exhausted her tribal remedies. The Court further denies Petitioner's motion for release on her own recognizance as moot.

## I.    Factual and Procedural Background

Petitioner is a member of the Kickapoo Tribe in Kansas, a federally recognized Indian tribe in the State of Kansas.  She is a lifelong resident of the Kickapoo Reservation, and before her incarceration, she resided there with her husband and two children.  She also served as a member of the Kickapoo Tribal Council for more than 20 years.

Petitioner was charged by the Tribe in two criminal cases, CRM016-24 and CRM016-11, with one count of fraudulent handling of recordable instruments, one count of tampering with records, and one count of misusing public money in violation of the Kickapoo Tribal Code, in each of the two cases.  The Tribe alleged that Petitioner fraudulently handled and tampered with the Tribe's records, including tribal resolutions, to authorize the improper and fraudulent draw down of tribal funds.  A jury trial in the Tribal District Court of the Kickapoo Tribe in Kansas was held on March 8-9, 2017.

Before the court began jury selection, Petitioner's counsel objected to the jury instructions offered by the Tribe.  The Tribe mailed its proposed jury instructions to Petitioner on February 28, 2017, although Petitioner's counsel claims that he did not find them in his mailbox until Friday, March 3.  He also states that he filed Petitioner's objections to Tribe's instructions and a supporting memorandum on Sunday March 5, but that they were not filed stamped until the morning of March 6.  The district judge denied Petitioner's motion in whole, stating that the alternative instructions that she offered were "remarkably similar with minor variations" to those proposed by the Tribe, that Petitioner did not provide her alternative instructions within the required time limits found in the Kickapoo Court Rules, and that the parties were able to compromise regarding the language in two of the instructions.

Once trial began, the district judge selected the jury panel for voir dire by drawing names from a clear bowl. Petitioner's counsel questioned the potential jurors during voir dire. One potential juror stated that she had an ear piece and difficulty hearing. As a result, Petitioner's counsel challenged this juror for cause. The judge denied the motion because the juror stated that she could hear the judge when he spoke. The judge also stated that he would tell people to speak up if they mumbled during trial so the court reporter could make an adequate record. In addition, two prospective jurors employed at a casino run by the Tribe indicated that they feared losing their jobs if they were on the jury. In response, the judge told the prospective jurors that they could not be terminated because they served on a jury.

Ultimately, Petitioner's counsel passed the entire panel for cause. But, after the jury was seated, her counsel objected to the jury arguing that it was tainted. Petitioner's counsel argued that several times he saw the judge draw a name out of the bowl and then put it back in and draw another one. The judge denied counsel's motion without any explanation at trial. However, in the Court Minute/Journal Entry filed twelve days later, on March 20, 2017, the judge explained the jury selection procedure. He explained that that the juror cards were stiff and would stick together and that he separated the cards when randomly selecting one. The district judge also noted that he rejected one juror who was not in the court because of terminal medical issues.

During the trial, Petitioner's counsel reported to the court that Kickapoo Tribe Chairman Lester Randall and Vice Chairman Fred Thomas were observed in the jury room with at least four jury members. In response, the judge asked the bailiff if Chairman Randall spoke to the jurors in any way, and he responded that he was not aware of that occurring. The judge then asked the jury if anyone contacted them about the case. The jury responded "no." The judge

also asked the jury if they met with anyone or discussed the case with any person, and the jury responded "no."

The jury found Petitioner guilty on all six counts from both cases. The judge set a cash bond in the amount of $2,500, which Petitioner was required to pay or remain in custody until her sentencing on April 24, 2017. Petitioner paid the bond and was released from custody. She did not file a motion for a new trial within the seven day time limit provided by the Kickapoo Nation Tribal Code.

On Friday, March 31, 2017, the Kickapoo District Judge issued a warrant for Petitioner's arrest based on a Motion to Revoke and Forfeit Bond filed by the Tribe. In the motion, the Tribe asserts that Petitioner "has committed a new criminal act or otherwise criminally harassed and intimidated a member of the Kickapoo Tribal Council to-wit:  Carla Cavin." The motion is supported by Cavin's affidavit, in which she states that on March 30, Petitioner drove her vehicle at 75 miles per hour on Highway 20, preventing Cavin from passing her and forcing Cavin to drive in a no-passing zone. It further states that once Cavin passed Petitioner's vehicle, Petitioner tailgated her to the Kickapoo Reservation boundary. Petitioner admits that she drove on Highway 20 on March 30 but denies seeing Cavin, driving 75 miles per hour, and tailgating any vehicle to the Kickapoo Reservation boundary. As a result of the motion and Cavin's affidavit, Petitioner was arrested and taken to the Brown County jail.

On April 7, 2017, Petitioner filed an Emergency Request for Release of Defendant or Further Hearing, with the Supreme Court of the Kickapoo Tribe in Kansas. One week later, on April 14, she filed her Petition for Writ of Habeas Corpus with this Court. Petitioner's Petition alleges that the Kickapoo Tribe District Court deprived her of her liberty without due process of law as required under the Indian Civil Rights Act ("ICRA"). Petitioner was held in Brown

County jail from the time she was arrested on March 31 until her sentencing on April 24, 2017, and no hearing was held during this time.

On April 24, 2017, the district judge held Petitioner's sentencing hearing. The initial presentence investigation report prepared by the probation officer recommended a prison term of 10 years. The probation officer subsequently amended the presentence investigation report to recommend a prison term of six years and that Petitioner be incarcerated in the Bureau of Indian Affairs ("BIA") prison.

During the sentencing hearing, the Tribe's special prosecutor first recommended that the presentence investigation report be adopted as written. He then advised the court that he had computed a new corrected prison sentence of 216 months. When questioned by Petitioner's counsel, the special prosecutor stated that he recommended 96 months for count one in each criminal case and six months each for counts two and three in each criminal case. Petitioner's counsel then informed the special prosecutor that the recommendation of 96 months for each count one was incorrect because it was based on a typo in the Kickapoo Nation Tribal Code, which states that the punishment for such crime shall be punishable for a term "not exceeding six 96) months."[1] The special prosecutor acknowledged the typographical error in the Kickapoo Tribal Code, stating that he believed that the number nine was mistakenly typed instead of the open parenthetical. The judge agreed, stating that there cannot be a 96 month penalty in Tribal Court. For the first criminal case, the judge ultimately sentenced Petitioner to 18 months of incarceration on the three counts of conviction, and a fine of $500. For the second criminal case,

---

[1] Kickapoo Nation Tribal Code, Title 10, § 138.

the judge sentenced Petitioner to 22 months of incarceration[2] on the three counts of conviction, to run concurrently to the sentence from the first criminal case.  In addition, the judge ordered Petitioner to pay daily incarceration fees to the Brown County jail from the time of incarceration until she was transported to prison and $75 in court costs.  The judge did not give Petitioner credit for her time already served in the Brown County jail.

After the judge issued the sentence, Petitioner's counsel asked him to advise her of her appeal rights.  The judge stated "you have the right to appeal my sentence.  You have the right to appeal . . . my sentence.  You may do so.  You have counsel.  If you wish to have [indecipherable] on appeal, you can make the appropriate motion to request for that."  The special prosecutor also verbally advised Petitioner of her right, stating "Under 402(b) it says, 'After imposing sentence, the Court shall inform the defendant of his right to appeal and if so requested shall direct the Clerk to file a notice of appeal on behalf of the defendant.  After any— at any time after a notice of appeal is filed, the Court may entertain a motion to set bail pending appeal."

Petitioner did not file a notice of appeal with the Kickapoo Supreme Court.  On May 4, 2017, she filed a Supplement to her Petition for Writ of Habeas Corpus.  In her Supplement, Petitioner reasserted her claim that she was denied due process and equal protection of the law as required by ICRA.  She also added a claim that she was subjected to cruel and unusual punishment in violation of ICRA.  Petitioner requested that the Court issue a writ of habeas

---

[2] It is unclear how the judge arrived at a 22 month sentence of incarceration for the second case, but that sentence is neither explained nor challenged by the parties, and the Court's ultimate ruling in this case is unaffected by this sentence.

corpus commanding her immediate release from Brown County jail, overturn her criminal convictions, and stay all further tribal court action against her.

After reviewing Petitioner's Petition and Supplement, the Court ordered Respondents to respond to Petitioner's request for immediate release by Monday, May 8, 2017. On Sunday May 7, the Kickapoo Supreme Court denied Petitioner's Emergency Request of Release of Defendant or Further Hearing with the Supreme Court of the Kickapoo Tribe in Kansas that she had filed one month before. Respondents have responded to the Petition and Supplement, and Petitioner has filed her Traverse. Therefore, the matter is ripe for the Court's consideration.

### III.    Analysis

Indian tribes are separate sovereigns that are not subject to the limitations and restrictions imposed by the United States Constitution.[3]  Indeed, "[c]onstitutional provisions that limit federal or state authority do not apply to Indian tribes because the tribes retain powers of self-government that predate the Constitution."[4]  To protect the individual rights of tribal members, Congress enacted ICRA, which imposes restrictions on tribal governments and creates a statutory basis for civil rights.[5]  Section 1302 of ICRA grants tribal members civil rights that are similar to those found in the Constitution's Bill of Rights, such as freedom of speech, due process, equal protection, and double jeopardy.[6]

---

[3] *See Talton v. Mayes*, 163 U.S. 376, 384-85 (1896) (finding that the Cherokee Nation's criminal courts were not subject to Fifth Amendment requirements); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880-81 (2d. Cir. 1996).

[4] *Valenzuela v. Silversmith*, 699 F.3d 1199, 1202 (10th Cir. 2012) (citing *Poodry*, 85 F.3d at 880-81).

[5] *Id*. at 1203; see also 25 U.S.C. §§ 1301 *et seq*.

[6] 25 U.S.C. § 1302.

Although § 1302 of ICRA gives tribal members individual rights, it "does not provide a civil cause of action in federal court against tribal officials."[7]  The only way that a tribal member may seek relief for violations of § 1302 is by filing a petition for writ of habeas corpus under § 1303.[8]  This section states:  "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."[9]

In this case, Petitioner asserts that the Tribe violated two provisions of § 1302.  The first relevant provision states that "[n]o Indian tribe . . . shall deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."[10]  Petitioner argues that the Tribe denied her equal protection of the law and due process by sentencing her to the maximum amount of prison time allowed by statute, failing to give her credit for time served, and failing to give her a fair hearing on the issue of whether her bond conditions were violated when the district judge revoked her bond.  The second relevant provision of § 1302 states that "[n]o Indian Tribe . . . shall require excessive bail, impose excessive fines, or inflict cruel and unusual punishments."[11]  According to Petitioner, the district judge's sentence amounts to cruel and unusual punishment because she was not given a due process hearing when her bond was revoked, the judge sentenced her to the maximum allowed

---

[7] *Valenzuela*, 699 F.3d at 1203.

[8] *Id.*

[9] 25 U.S.C. § 1303.

[10] *Id.* § 1302(a)(8).

[11] *Id.* § 1302(a)(7)(A).

statutory amount even though she has no prior criminal history, and the judge denied her probation.

Respondents deny Petitioner's allegations and argue that the Court must deny Petitioner's Petition for Writ of Habeas Corpus. According to Respondents, the Court does not have subject matter jurisdiction over her Petition because she has not exhausted her tribal court remedies. In addition, Respondents argue that her allegations do not amount to violations of equal protection and due process under § 1302(a)(8) or cruel and unusual punishment under § 1302(a)(7)(A). Before addressing the merits of Petitioner's claims, the Court must determine whether she has exhausted her tribal court remedies.

## A.    Exhaustion and § 1303

ICRA does not expressly require a petitioner to exhaust her claims before filing a petition for writ of habeas corpus in federal court.[12] Nonetheless, federal courts, including the Tenth Circuit, impose an exhaustion requirement in habeas corpus cases filed under § 1303.[13] This requirement serves several purposes.[14] First, it "reinforces Congress's strong interest in promoting tribal sovereignty, including the development of tribal courts."[15] Second, it supports "the orderly administration of justice in . . . federal court[s] . . . by allowing a full record to be developed in the [t]ribal [c]ourt before either the merits or any question concerning appropriate

---

[12] *See id.* § 1303.

[13] *Valenzuela*, 699 F.3d at 1206-07; *see also Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010) ("[A] litigant must first exhaust tribal remedies before properly bringing a petition for writ of habeas corpus [pursuant to § 1303]."); *Necklace v. Tribal Court of Three Affiliated Tribes*, 554 F.2d 845, 846 (8th Cir. 1977) ("[T]ribal remedies must ordinarily be exhausted before a claim is asserted in federal court under [§ 1303].").

[14] *See Valenzuela*, 699 F.3d at 1206 (stating that the underlying purposes of the tribal exhaustion rule support applying the rule to § 1303 petitions).

[15] *Id.* (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985)).

relief is addressed [in federal court]."[16]  And third, an exhaustion requirement provides the tribal

court "a full opportunity . . . to rectify any errors that it may have made."[17]

The tribal exhaustion rule is not absolute.  The Supreme Court has stated that exhaustion

of tribal remedies is not required where (1) "an assertion of tribal jurisdiction is motivated by a

desire to harass or is conducted in bad faith,"[18] (2) the action "is patently violative of express

jurisdictional prohibitions,"[19] (3) "exhaustion would be futile because of the lack of an adequate

opportunity to challenge the court's jurisdiction,"[20] (4) "[w]hen it is plain that no federal grant

provides for tribal governance of nonmembers' conduct [on certain lands],"[21] or (5) it's

otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement serves

no other purpose than delay.[22]  Allegations of local bias and tribal court incompetence, however,

do not satisfy the exhaustion requirement.[23]

Petitioner has not exhausted her tribal court remedies in this case.  After the district judge

filed the sentencing order, Petitioner never filed a notice of appeal to the Kickapoo Supreme

Court.[24]  But Petitioner contends that she does not have to exhaust her tribal remedies because

---

[16] *Id*. (internal quotation marks omitted).

[17] *Id*.

[18] *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (quoting *Nat'l Farmers*, 471 U.S. at 857 n.21).

[19] *Id*.

[20] *Id*.

[21] *Id*. (quoting *Strate v. A-1 Contrs.*, 520 U.S. 438 n.14 (1997)).

[22] *Id*. (quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)).

[23] *Id*. (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987)).

[24] Respondents do not address, and the Court is not aware, whether the Kickapoo Tribal Code allows a defendant to file a habeas corpus petition.  If such relief was available to Petitioner, she must also exhaust this remedy, in addition to filing an appeal to the Kickapoo Supreme Court, before filing her § 1303 petition. *See*

-10-

she satisfies the exceptions to exhaustion set forth in *Burrell*.  Specifically, Petitioner argues that the assertion of tribal jurisdiction was motivated by a desire to harass or was conducted in bad faith and that the assertion of tribal jurisdiction would be futile.

>    *1.     Tribal Jurisdiction Motivated by a Desire to Harass or Conducted in Bad Faith*

Petitioner alleges myriad ways that the assertion of tribal jurisdiction was motivated by a desire to harass or conducted in bad faith.  Specifically, she alleges that: (1) Chairman Randall threatened that he would make Petitioner pay for the Federal Bureau of Investigation ("FBI") and BIA's investigations of his handling of tribal trading post funds;[25] (2) Chairman Randall sent four newsletters to Tribe members before trial to ensure that all members thought she was guilty; (3) the judge did not randomly select the jury; (4) Chairman Randall and Vice-Chairman Lester were seen in the jury room with members of the jury during trial; (5) the special prosecutor had Petitioner and her family followed during lunch recess on the first day of trial; (6) Chairman Randall was seen laughing in the courtroom after the jury returned its verdict; (7) the judge revoked her bond based on the affidavit of Carla Cavin and placed her in the Brown County jail without a hearing; (8) the probation officer and special prosecutor illegally recommended sentences of ten years and six years; (9) the district judge did not advise Petitioner of her right to appeal and did not give her credit for time served; and (10) the Kickapoo Supreme Court ignored Petitioner's emergency request for release after her bond was revoked.  Respondents argue that these allegations merely amount to bias or tribal court incompetence and thus do not excuse Petitioner from the tribal exhaustion requirement.

---

*Valenzuela*, 699 F.3d at 1207-08 (finding that because a habeas corpus provision was available to the petitioner under the tribal governing code, he was required to exhaust this habeas relief before filing his § 1303 petition).

>    [25] The circumstances surrounding Chairman Randall's alleged threat are explained in more detail below.

Several of Petitioner's allegations can be discarded outright, as they are irrelevant to the assertion of tribal jurisdiction or Petitioner's convictions.  For example, Petitioner emphasizes throughout her briefs that the probation officer and special prosecutor recommended illegal sentences of ten years and six years in the presentence investigation report and amended presentence investigation report, respectively.  The judge, however, did not adopt their sentencing recommendations.  Instead, he sentenced Petitioner to 18 months in prison for the first case and 22 months in prison for the second case, with the sentences to run concurrently.  These allegations relating to "illegal sentences" are therefore irrelevant to Petitioner's ultimate sentence.  The Court also discards Petitioner's accusations that Chairman Randall sent newsletters to Tribe members to persuade tribe members that she was guilty,[26] that Chairman Randall was laughing in the courtroom after the jury returned a guilty verdict, and that the special prosecutor had her followed during the noon recess on the first day of trial.  These allegations are inconsequential, not supported by the record, and thus irrelevant to the assertion of tribal jurisdiction.

Petitioner's remaining allegations could arguably extend beyond bias and tribal court incompetency.  Therefore, the Court will address them individually below.

a.    Chairman Randall's Alleged Threat to Petitioner

Petitioner contends that the criminal charges asserted by the Tribe were some form of revenge by Chairman Randall.  In 2014, the Tribe's accountant allegedly reported to Petitioner that Randall, who was then serving as a Tribal Council Member and not as Chairman, had

---

[26] Petitioner claims that Chairman Randall sent four newsletters to the Tribe to ensure that all tribal members would think that she is guilty before her trial.  Only two of those newsletters actually referred to the criminal cases filed against Petitioner.  The other two did not refer to Petitioner by name.  They vaguely addressed mismanagement of funds and budgets by the previous tribal council.  Regardless, any potential issues that could have arisen out of the letters with regard to potential jurors were addressed by the questions during jury selection.

mishandled funds related to the Tribe's trading post store. Upon hearing this report, the Tribal Council voted to report the matter to the BIA, and the BIA and FBI subsequently conducted an investigation of the matter. According to Petitioner, once Randall became the Tribe Chairman in 2015, he threatened to retaliate against her because she was part of the Tribal Council that contacted the BIA.

Petitioner uses this alleged conduct to show that the assertion of jurisdiction by the tribal court is motivated by a desire to harass. Petitioner, however, brought the alleged threat before the jury, and the jury had the opportunity to consider this defense when determining whether or not to convict her. Therefore, the Court does not believe it is sufficient to show bad faith or harassment.

> b.    Jury Selection

Petitioner contends that the district judge tainted the jury pool. She alleges that on several occasions the judge would draw a name out of the glass bowl, place that name aside, and then draw another name. Petitioner's counsel objected to this procedure after the jury was seated. The judge denied his motion outright without any explanation for the denial.

Although this conduct appears suspicious, the judge explained his actions in the Court Minute/Journal Entry filed after trial. In that filing, the judge stated that the juror cards were stiff and would stick together, and thus, he merely separated the cards when selecting a name to be called. He also stated that he placed one card aside because the potential juror had a terminal illness. The Court is satisfied with this explanation, as it reasonably clarifies the judge's actions.

Petitioner also implies that the jury selection was conducted in bad faith because the district judge did not dismiss for cause a juror who had difficulty hearing or several prospective jurors who feared losing their jobs if selected. The Court has reviewed the transcript of the jury

selection. The judge did not ignore these issues but addressed them fairly. For the potential juror who had difficulty hearing, he asked if the juror could hear him, and she responded affirmatively. And for the potential jurors who claimed to be fearful of losing their jobs, he assured them that they could not be terminated for serving on a jury. This conduct does not rise to the level of bad faith or harassment.

c.    Jury Tampering

Petitioner asserts that Chairman Randall and Vice-Chairman Thomas were in the juror room with at least four jurors during lunch recess on the first day of trial. Petitioner, however, has not pointed to any evidence that these conversations actually occurred. Petitioner's counsel did not actually see the men in the room. He only stated that such occurrence was reported to him. Neither the bailiff nor the special prosecutor saw the men in the room. Furthermore, upon questioning from the judge, the jury members denied having contact with anyone outside the case or talking with anyone outside the case. Accordingly, this allegation does not support Petitioner's argument that the assertion of tribal jurisdiction is motivated by bad faith or a desire to harass.

d.    Petitioner's Right to Appeal and Credit for Time Served

Petitioner next alleges that the judge did not advise her of her appeal rights at her sentencing and that the district judge did not give her credit for her time already served in the Brown County jail as required by the Kickapoo Nation Tribal Code. With regard to advising Petitioner of her right to appeal, § 402 of the Kickapoo Nation Tribal Code states that "[a]fter imposing sentence, the Court shall inform the defendant of his right to appeal, and if so

-14-

requested, shall direct the clerk to file a notice of appeal on behalf of the Defendant."[27]  Upon counsel's prompting, after imposing her sentence at the sentencing hearing, the district judge told Petitioner that she had the right to appeal his sentence.  Later in the hearing, the special counsel reiterated that Petitioner had this right by reading § 402(b) of the Kickapoo Nation Tribal Code out loud to the court and Petitioner.  Finally, the Sentencing Order also informed Petitioner that she had the right to appeal.  It states:  "Defendant is notified that she has certain rights of appeal both conviction and sentence, and may seek an appeal bond from the Supreme Court of the Kickapoo Nation pending determination of any such appeal."  Petitioner's allegations that she was not lawfully advised of her right to appeal are not supported by the evidence.

With regard to whether Petitioner should receive credit for time served, both Petitioner and Respondents agree that Petitioner has a right to credit for time served under Title 11, § 402(c) of the Kickapoo Nation Tribal Code.  This is a substantive claim, which the Court declines to consider at this time.  For purposes of this Order, the Court does not conclude that the judge's failure to give Petitioner credit for time served rises to the level of bad faith or harassment.

e.    Revocation of Petitioner's Bond Prior to Sentencing

After being released on bond following her jury trial, Petitioner was arrested on March 31, 2017, pursuant to an arrest warrant issued by the district judge.  The arrest warrant was based on a Motion to Revoke and Forfeit Bond and the Affidavit of Carla Cavin.  In the Affidavit, Cavin declared that Petitioner prevented Cavin from passing her on Highway 20 thereby putting her in danger.  She also stated that Petitioner tailgated her to the Kickapoo reservation boundary.

---

[27] Kickapoo Nation Tribal Code Title 11, § 402(b).

Petitioner alleges that when she was released on bond following her jury trial, the district judge did not issue an appropriate order containing a statement of conditions imposed on her release.  She also alleges that the district judge did not inform her of the penalties applicable to violations of her conditions of release, as required by Section 701 of the Kickapoo Nation Tribal Code.  Petitioner contends that the subsequent revocation of her bond without a hearing violates of her due process rights and is evidence of the trial court's bad faith or harassment.

The Court disagrees.  Without addressing the merits of Petitioner's due process claim, the Court concludes that the judge's conduct in issuing and revoking Petitioner's bond does not rise to the level of bad faith or harassment.  This Court may not have revoked bond under similar circumstances, but that does not mean that the district judge's decision rises to that level. Moreover, Petitioner's argument seems moot in light of the fact that after her bond was revoked, the judge sentenced her for 18 months and 22 months imprisonment for her convictions.

f.    Petitioner's Request for Emergency Release

Petitioner argues that the Kickapoo Supreme Court intentionally ignored her emergency request for relief for four weeks after her bond was revoked and only finally responded to it on a Sunday so the special prosecutor could attach it to Respondents' response to Petitioner's Request for Immediate Release.  The Court agrees that the Kickapoo Supreme Court did not act promptly in deciding Petitioner's appeal, but this is irrelevant in light of the fact that the judge sentenced her to imprisonment in the Brown County jail on April 24, 2017—seventeen days after she filed the request.  Furthermore, there is no evidence to support Petitioner's assertion that the only reason the Kickapoo Supreme Court responded to her request was so the special prosecutor could attach it to his response filed with this Court for immediate release.  Accordingly, this does not

support Petitioner's argument that the assertion of tribal jurisdiction is motivated by bad faith or harassment.

After reviewing all of the evidence, the Court is not convinced that the assertion of tribal jurisdiction was conducted in bad faith or motivated by a desire to harass. While allegations may extend beyond tribal court incompetence or bias, the evidence is not sufficient to invoke the exception to the exhaustion requirement. Therefore, unless Petitioner can meet another of the four exceptions outlined by the Tenth Circuit in *Burrell*, her Petition must be denied.

2.      *Futility of Tribal Jurisdiction*

Petitioner contends that she is not required to exhaust her tribal remedies because even if she did appeal to the Kickapoo Supreme Court, such appeal would be futile. The Court recognizes that Petitioner filed her Petition before she was even sentenced in the criminal cases. At that time, she argued that an appeal to the Kickapoo Supreme Court would be futile because the Kickapoo Supreme Court had not yet ruled on her motion for emergency release. Petitioner continued to argue futility, however, even after the Kickapoo Supreme Court ruled on her emergency motion. Petitioner now claims that exhaustion is futile because it took the Kickapoo Supreme Court four weeks to issue an order.

In support of her argument, Petitioner relies on *Wounded Knee v. Andera*,[28] a case from the District of South Dakota. In that case, the petitioner filed a request for permission to appeal her conviction for disorderly conduct and waited approximately six months without any action

---

[28] 416 F. Supp. 1236 (D.S.D. 1976).

by the tribe.[29]  As a result of that passage of time with no response from the tribal court, the district court concluded that she had sufficiently exhausted her tribal remedies.[30]

Petitioner's argument is not persuasive.  Unlike the tribal court in *Wounded Knee*, the Kickapoo Supreme Court actually issued an order regarding Petitioner's emergency motion. That order may not have been issued promptly, but it was issued nonetheless.  Furthermore, the petitioner in *Wounded Knee* actually followed every appeal avenue available to her, while Petitioner has not done the same.[31]  Petitioner has not filed an appeal of her criminal convictions or sentence to the Kickapoo Supreme Court.

Petitioner also alleges that exhaustion would be futile because neither the Kickapoo Supreme Court nor the Kickapoo Tribal Court has ruled on various matters pending in other cases.  Again, this argument is not persuasive.  The fact that these courts have not ruled on other matters is irrelevant, especially when there are no current or pending motions in either court related to this case.

In conclusion, Petitioner has not exhausted the remedies available to her in Kickapoo Tribal Court.  She has not filed a notice of appeal for her convictions or sentence, and she has not shown that any of the five exceptions to the exhaustion requirement apply in this case. Accordingly, the Court denies Petitioner's Petition for Writ of Habeas Corpus.

**B.      Respondents Alleged Violations of 25 U.S.C. § 1302**

Petitioner claims that she was denied liberty without due process of the law in violation of 25 U.S.C. § 1302(a)(8) and that she was subjected to cruel and unusual punishment in

---

[29] *Id*. at 1239.

[30] *Id*. at 1240.

[31] *Id*. at 1239.

-18-

violation of 25 U.S.C. § 1302(a)(7).  Because the Court has already concluded that Petitioner failed to exhaust her tribal remedies, the Court will not address the merits of these claims. Accordingly, Petitioner's Petition for Writ of Habeas Corpus is denied.

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Renewed Request for Release on Recognizance Bond (Doc. 25) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 29th day of November, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE